1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT TACOMA
10

11   MICHELLE VELARDE,                      CASE NO. 3:23-cv-06008-DGE

                         Plaintiff,          ORDER ON MOTION TO DISMISS
12         v.                                (DKT. NO. 10)

13   LOUIS DEJOY,

14                        Defendant.

15

16        This matter comes before the Court on Defendant's motion to dismiss for failure to state

17   a claim.  (Dkt. No. 10.)  For the reasons discussed herein, Defendant's motion is GRANTED.

18                    **I.      FACTUAL AND PROCEDURAL BACKGROUND**

19        Plaintiff, a 55 year old female, has worked at the United States Postal Service ("USPS" or

20   "Post Office") for 30 years.  (Dkt. No. 1 at 2.)  Plaintiff is currently employed as a Rural Carrier

21   at the Post Office's Poulsbo, Washington branch.  (*Id.*)

22        Plaintiff alleges her troubles began in 2020 after she was placed on limited duty

23   following two workplace injuries.  (*Id.* at 3.)  Plaintiff contends the Poulsbo postmaster, Carolyn

24

Sapp, mocked her and retaliated against her for being on limited duty and modified the document outlining her work limitations without consulting her treatment provider.  (*Id.*)

Plaintiff had a romantic relationship with Robert Monroe, a colleague of hers at the Poulsbo post office who later became her supervisor.  (*Id.*)  While Plaintiff was involved with Monroe, he was also engaged in a relationship with Amber Bustamante, Plaintiff's supervisor. (*Id.*)  Plaintiff ended her relationship with Monroe after learning about his involvement with Bustamante.  (*Id.*)  Plaintiff contends that shortly after she broke up with Monroe, he retaliated against her by issuing an "at-risk" employee performance report and forbidding other employees from assisting Plaintiff with parcels.  (*Id.*)  Plaintiff filed a grievance about Monroe's conduct on August 31, 2020.  (*Id.*)

Plaintiff alleges that shortly after becoming Plaintiff's supervisor in March 2022, Bustamante also retaliated against her by "commandeer[ing]" her parking space and her work laptop.  (*Id.* at 4.)  Plaintiff claims that on April 21, 2022, she overheard a loud argument between Bustamante and Post Office employee Carol Marchand, during which Bustamante refused Marchand's request for union representation.  (*Id.*)  Plaintiff intervened in the argument and told Bustamante that Marchand had a right to union representation.  (*Id.*)

On April 22, 2022, Plaintiff met with Sapp to discuss Bustamante's behavior.  (*Id.*)  On April 29, 2022, Plaintiff met with Sapp again to complain about her wages being short.  (*Id.*)  On May 2, 2022, Sapp informed Plaintiff there was no work for her at the Poulsbo post office and told her to choose a new assignment at one of several other post offices.  (*Id.* at 4–5.)  Plaintiff refused to leave and filed a grievance with her union on May 4, 2022.  (*Id.* at 5.)  Plaintiff's grievance was successful, and she continued to work at the Poulsbo post office.  (*Id.*)

On October 2, 2022, Plaintiff complained to Bustamante about certain safety issues. (*Id.*) On October 4, 2022, Plaintiff filed a union grievance regarding back pay and the existence of a hostile work environment. (*Id.*) On October 13, 2022, Sapp "openly mocked" Plaintiff's need for limited duty. (*Id.* at 6.)

On October 11, 2022, Plaintiff asked Bustamante if she could allocate some time to work on her edit book, which is "a log of special issues/challenges/barriers on mail routes such as safety issues, access issues and dangerous dog issues." (*Id.* at 6 n.1.) The edit book is typically completed by the carrier assigned to the mail route. (*Id.*) Bustamante said she would think about it, but on October 17, 2022, she ordered two other employees to complete the edit book for Plaintiff's route. (*Id.* at 6.)

On October 18, 2022, Plaintiff arrived at work thirty minutes early to work on updates to her edit book, which were due later that day. (*Id.*) When Bustamante saw Plaintiff, she ordered Plaintiff to stop working on her edit book and told her to either go to the break room or wait in her car. (*Id.*) Plaintiff went out to her car and had an argument with her union representative in the parking lot. (*Id.*) Shortly afterward, Bustamante came out to the parking lot, ordered Plaintiff off the premises, and gave her an emergency placement notice, which immediately places an employee in off-duty, unpaid status. (*Id.* at 7.) Plaintiff filed a grievance with her union concerning the emergency placement. (*Id.*) Plaintiff ultimately prevailed on her grievance. (*Id.*)

On December 4, 2022, Bustamante forbade another mail carrier, Noemi Mestelio, from assisting Plaintiff with delivering parcels on Plaintiff's route. (*Id.*) Bustamante never forbade other mail carriers from assisting their colleagues. (*Id.*) Plaintiff continued to have issues with unpaid wages and filed a grievance with her union about this on December 28, 2022. (*Id.*)

1    In January 2023, Sapp re-assigned Plaintiff to work in an isolated, unheated area of the

2    post office and ordered her to deliver mail in a vehicle for which Plaintiff had no training.  (*Id.* at

3    7–8.)  In February 2023, Sapp ordered Plaintiff to deliver mail on two routes with which she was

4    unfamiliar.  (*Id.* at 8.)

5    On August 22, 2023, Sapp instructed Plaintiff not to pray in the building after she

6    overheard Plaintiff reciting a prayer to comfort a co-worker.  (*Id.*)  On September 1, 2023, Sapp

7    instructed a post office employee to take down invitations for a work potluck at Plaintiff's home.

8    (*Id.*)  On October 20, 2023, Sapp told Plaintiff she could not go to the doctor on October 31,

9    2023 because "she was on full-duty status."  (*Id.*)

10   On October 30, 2023, Sapp handed Plaintiff a letter of demand for Plaintiff to pay back

11   disputed back wages.  (*Id.*)  Plaintiff alleges that for the past three years Sapp intentionally

12   changed Plaintiff's timesheets and Office of Worker's Compensation Program ("OWCP")

13   records, resulting in unpaid wages.  (*Id.* at 9.)

14   On October 1, 2022, Plaintiff filed an informal complaint with the Equal Employment

15   Opportunity Commission ("EEOC").  (*Id.* at 9.)  Plaintiff filed a formal complaint with the

16   EEOC on December 12, 2022.  (*Id.*)

17   On November 1, 2023, Plaintiff filed a complaint in this Court.  (Dkt. No. 1.)  Plaintiff

18   asserts several claims under Title VII of the Civil Rights Act of 1964: (1) Hostile Work

19   Environment, (2) Retaliation for engaging in a protected activity, specifically filing an EEOC

20   claim, (3) Retaliation for reporting violations of fellow union member's rights and reporting her

21   wages being short, and (4) Harassment.  (*Id.* at 9–10.)  Plaintiff also filed a claim pursuant to 29

22   U.S.C. § 215A, alleging Defendant retaliated against her under the Fair Labor Standards Act

23   ("FLSA") for claiming unpaid wages.  (*Id.* at 11.)

24

On February 20, 2024, Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 10.)

## II.     LEGAL STANDARD

On a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded factual allegations and construe the allegations in favor of the non-moving party.  *See Wood v. City of San Diego*, 678 F.3d 1075, 1080 (9th Cir. 2012).  The Court need not, however, assume the truth of conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  The complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 547.

## III.     DISCUSSION

### A.  Title VII – Hostile Work Environment and Harassment

Defendant contends Plaintiff's complaint fails to state a claim for hostile work environment or harassment under Title VII.  (Dkt. No. 10 at 6.)  Defendant argues Plaintiff's complaint does not contain any allegation of a hostile work environment or harassment due to

her race, color, religion, sex, or national origin.  (*Id.*)  Defendant contends the complaint contains only a passing reference to Plaintiff's sex and does not allege the conduct described in the complaint was due to Plaintiff's sex.  (*Id.*)

Plaintiff argues the facts alleged in the complaint are sufficient to state a claim for hostile work environment and harassment based on sex discrimination.  (Dkt. No. 14 at 9.)  Plaintiff contends the facts set forth in the complaint "demonstrate that plaintiff's complaints about how she was treated by her male supervisor were ignored and he was not subject to any investigation or discipline whereas she was subject to adverse action by her supervisors."  (*Id.* at 10.)

To allege a prima facie hostile work environment claim under Title VII, a plaintiff must show: (1) that she was subjected to verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of their employment and create an abusive working environment.  *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017).

Plaintiff's complaint does not set forth any facts concerning her hostile work environment claim.  The complaint contains no facts concerning unwelcome verbal or physical conduct of a sexual nature, let alone conduct severe or pervasive enough to create an abusive work environment.  To the extent the complaint contains any facts concerning Plaintiff's interaction with her male supervisor, it appears to allege that her male supervisor began treating her differently after she ended their relationship, but does not allege any facts that would support a hostile work environment claim based on sex.  *See Nygren v. AT & T Wireless Servs., Inc.*, Case No. C03-3928JLR, 2005 WL 1152281, at *3 (W.D. Wash. April 21, 2005) (A supervisor's preference for a paramour is not gender discrimination, because men and women alike face

1    exactly the same predicament - they receive unfair treatment because they have no personal

2    relationship with the supervisor.)

3         To prevail on a sexual harassment claim under Title VII, a plaintiff must show that (1)

4    she "was subjected to a hostile work environment," and (2) her employer "was liable for the

5    harassment that caused the hostile environment to exist." *Fried v. Wynn Las Vegas, LLC*, 18

6    F.4th 643, 647 (9th Cir. 2021).  Because Plaintiff has not set forth facts that would support a

7    hostile work environment claim, she has also failed to state a claim for sexual harassment.

8         Accordingly, Plaintiff has failed to state a claim for hostile work environment or

9    harassment under Title VII.

10   **B.  Title VII – Retaliation**

11        Defendant argues Plaintiff's complaint does not state a claim for retaliation under Title

12   VII because Plaintiff has not alleged that she engaged in protected activity.  (Dkt. No. 10 at 7.)

13   Plaintiff contends she did engage in protected activity, including: "(1) filing wage complaints;

14   (2) filing union grievances; (3) complaining to HR about a hostile working environment; and (4)

15   advocating for union rights for other workers."  (Dkt. No. 14 at 10.)

16        Plaintiff contends she has adequately pleaded that Defendant retaliated against her for her

17   protected activity by placing her in an unheated work area, forbidding other workers from

18   assisting her in her work, telling her there was no work available for her at the Poulsbo location,

19   sending her out in vehicles for which she had no training, sending her on rural routes for which

20   she had no experience, and mocking her need for limited duty.  (*Id.*)

21        To make out a prima facie case of retaliation under Title VII, an employee must show

22   that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse

23

24

1    employment action; and (3) a causal link exists between the protected activity and the adverse

2    action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

3        With respect to the first element, an employee has engaged in a protected activity if she

4    (1) has opposed any practice made an unlawful employment practice by Title VII; or (2) has

5    made a charge, testified, assisted, or participated in any manner in a Title VII investigation,

6    proceeding, or hearing.  *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004); 42

7    U.S.C. § 2000e–3(a).  For purposes of Title VII, an employer engages in an unlawful

8    employment practice by "discriminat[ing] against any individual with respect to his

9    compensation, terms, conditions, or privileges of employment, because of such individual's race,

10   color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

11       Plaintiff's union activity "is not within the scope of Title VII's protected activity" and

12   cannot form the basis of a retaliation claim.  *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1298

13   (N.D. Cal. Feb. 3, 2020) (citing cases).  With respect to Plaintiff's wage complaint, Plaintiff does

14   not appear to allege that her wages were withheld because she opposed any unlawful

15   employment practice.

16       Plaintiff's complaint alleges that since 2020, Carolyn Sapp intentionally changed

17   Plaintiff's timesheets and OWCP records, resulting in unpaid wages.  (Dkt. No. 1 at 9.)

18   Plaintiff's complaint alleges that Sapp mistreated Plaintiff in several different ways, but does not

19   set forth facts alleging any causal connection between a protected activity and Sapp's decision to

20   withhold Plaintiff's wages.  To the extent the complaint suggests such a connection, its assertion

21   that Sapp began withholding Plaintiff's wages in 2020 appears to imply that Sapp did so due to

22   Plaintiff's workplace injury, which occurred the same year.  However, a cause of action based on

23   Plaintiff's workplace related injuries cannot form the basis of a Title VII claim. *Ngo v. DeJoy*,

24

1    Case No. C22-0415, 2024 WL 358285, at *1 n.2 (W.D. Wash. Jan. 31, 2024) ("Plaintiff's claim

2    for discrimination on the basis of disability is not cognizable under Title VII[.]").

3              Accordingly, Plaintiff has failed to state a claim for retaliation under Title VII.

4        **C. FLSA – Retaliation**

5              Defendant contends Plaintiff's complaint fails to state a claim for retaliation under the

6    FLSA.  (Dkt. No. 10 at 8–9.)

7              The FLSA prohibits discriminating against an employee because the employee has filed a

8    complaint or initiated a proceeding against the employer.  29 U.S.C. § 215(a)(3).  The FLSA's

9    anti-retaliation provision is interpreted expansively.  *Rosenfield v. GlobalTranz Enters., Inc.*, 811

10   F.3d 282, 286 (9th Cir. 2015).  To state a prima facie retaliation claim under the FLSA, a

11   plaintiff must show: (1) she engaged in activity protected by the FLSA; (2) the defendant took an

12   adverse employment action; and (3) there was a causal link between the protected activity and

13   the adverse action.  *Quinn v. Everett Safe & Lock, Inc.*, Case No. C13-0005, 2014 WL 4635577,

14   at *5 (W.D. Wash. July 18, 2014).

15             Defendant argues it is unclear whether Plaintiff engaged in protected activity giving rise

16   to a claim for retaliation under the FLSA because she does not allege that she complained about

17   violations of her rights to minimum wage or overtime pay.  (Dkt. No. 10 at 9.)  Defendant further

18   argues that it is unclear precisely what adverse employment action Plaintiff experienced after she

19   complained about unpaid wages, and whether there was any causal connection between her wage

20   complaints and the adverse action.  (*Id.*)

21             "The FLSA's anti-retaliation provision protects employees who complain to their

22   employers about an alleged violation of the FLSA."  *McMillan v. Cpride Grp. LLC*, Case No.

23   21-cv-549, 2022 WL 1203741, at *5 (W.D. Wash. Apr. 22, 2022).  An employee is protected by

24

1   this provision as long as she communicates "the substance of her allegations to the employer

2   (e.g., that the employer has failed to pay adequate overtime, or has failed to pay the minimum

3   wage)" and "need not refer to the FLSA by name." *Lambert v. Ackerley*, 180 F.3d 997, 1008

4   (9th Cir. 1999) (italics omitted).

5       Protected activity under the FLSA may be construed as "conduct that reasonably could be

6   perceived as directed towards the assertion of rights protected by the statute." *Campbell-*

7   *Thomson v. Cox Comm.*, Case No. CV–08–1656–PHX–GMS, 2010 WL 1814844, at *5 (D. Ariz.

8   May 5, 2010).  Here, it is unclear from Plaintiff's complaint whether she complained about the

9   violation of rights protected by the FLSA.  The FLSA provides for the recovery of unpaid

10  minimum wages, unpaid overtime compensation, and liquidated damages. *Biggs v. Wilson*, 1

11  F.3d 1537, 1539 (9th Cir. 1993).  Plaintiff's wage complaints may or may not have involved

12  unpaid minimum wages or overtime compensation.

13      Even if Plaintiff did complain about the violation of rights protected by the FLSA,

14  Plaintiff's complaint does not explain what adverse employment action Defendant took as a

15  result of her wage complaint.  While Plaintiff's complaint sets forth numerous unfavorable acts

16  by Defendant against her, Plaintiff has not set forth fact alleging which of these actions, if any,

17  was taken in response to Plaintiff's wage complaint.  Nor are there any facts alleging a causal

18  connection between Plaintiff's wage complaint and any adverse employment action.

19      Accordingly, Plaintiff has failed to state a claim for retaliation under the FLSA.

20  **D.  Exhaustion**

21      Defendant contends Plaintiff has failed to exhaust certain claims contained in her EEOC

22  complaint.  (Dkt. No. 10 at 10–11.)

23      "To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or

24

1    her administrative remedies before seeking adjudication of a Title VII claim." *Lyons v. England*,

2    307 F.3d 1092, 1103–1104 (9th Cir. 2002).  In order to exhaust her administrative remedies, a

3    plaintiff must have (1) filed a timely charge with the EEOC, and (2) timely acted upon a right-to-

4    sue letter.  *See* 42 U.S.C. § 2000e-5(e)-(f); *see also Myers-Desco v. Lowe's HIW, Inc*., 484 Fed.

5    Appx. 169, 171 (9th Cir. 2012).

6         Under federal regulations, federal employees who believe they have been discriminated

7    against must consult an EEOC counselor prior to filing a complaint in order to try to informally

8    resolve the matter.  29 C.F.R. § 1614.105(a).  A federal employee must initiate contact with an

9    EEOC counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the

10   case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. §

11   1614.105(a)(1).  Although it does not carry the full weight of statutory authority, failure to

12   comply with this regulation is "fatal" to a federal employee's discrimination claim.  *Lyons*, 307

13   F.3d at 1105.

14        Plaintiff filed her informal EEOC complaint on October 1, 2022, and her formal

15   complaint on December 12, 2022.[1]  (Dkt. No. 1 at 9.)  Defendant argues Plaintiff could therefore

16   only have exhausted those claims that accrued on or after August 15, 2022, 45 days prior to her

17   October 1, 2022 complaint.  (Dkt. No. 10 at 11.)  Defendant contends any allegations from

18   before that date were not timely exhausted, nor were they accepted by the EEOC for

19   investigation.  (*Id.*)

20

21

22   _____

     [1] Plaintiff's complaint is unclear concerning when she met with an EEOC counselor.  Plaintiff's
23   complaint references meetings with Jennifer Wright on September 2, 2020 and Jason Winzer on
     October 21, 2022, but it is unclear if Ms. Wright or Mr. Winzer are EEOC counselors.  (Dkt. No.
24   1 at 3, 7.)

1    Plaintiff does not dispute that she did not contact an EEOC counselor within 45 days of

2    many of the allegedly discriminatory actions contained in her complaint.  Plaintiff instead argues

3    that Defendant's motion relies on exhibits outside the pleadings, namely Plaintiff's EEOC

4    complaint, and that this information should be excluded or Plaintiff's motion to dismiss should

5    be converted into a motion for summary judgment.  (Dkt. No. 14 at 9.)

6    Courts may not typically review documents outside the pleadings on a motion to dismiss

7    without converting the motion to dismiss into one for summary judgment.  *See United States v.*

8    *Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, a court "may [] consider certain

9    materials—documents attached to the complaint, documents incorporated by reference in the

10   complaint, or matters of judicial notice—without converting the motion to dismiss into a motion

11   for summary judgment."  *Id.* at 908.  "In the context of employment discrimination cases in

12   particular, it is well established that courts may consider the administrative record of a plaintiff's

13   claims before the EEOC as judicially noticeable matters of public record."  *Lacayo v. Donahue*,

14   Case No. 14–cv–04077–JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) (collecting

15   cases).

16   The Court takes judicial notice of Plaintiff's EEOC complaint, which was attached to a

17   declaration filed by Defendant.  (Dkt. No. 11-1.)  The EEOC accepted one of the ten allegations

18   in Plaintiff's complaint for investigation, namely Plaintiff's allegation that on October 17, 2022,

19   she was not allowed to work on her edit book and given an emergency placement notice.  (*Id.* at

20   3.)  The EEOC dismissed the remaining nine allegations in Plaintiff's complaint, finding that

21   Plaintiff did not contact an EEOC counselor until October 2, 2022, "approximately eighteen

22   months to more than two and three quarters years" after six of the incidents cited in Plaintiff's

23

24

complaint and "well beyond 45 days after the events of alleged discrimination which took place in March, April and May 2022." (*Id.* at 4.)

For those allegations prior to August 15, 2022, Plaintiff did not initiate contact with an EEOC counselor and therefore did not exhaust her remedies in a timely manner. Having failed to do so, she cannot maintain a federal cause of action based on these allegations.

### E.  Leave to Amend

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Association v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014). Because the Court believes the Complaint may possibly be cured by allegations of other facts, Plaintiff is granted leave to amend to attempt to address the deficiencies identified herein.

The Court notes that Plaintiff, in response to Defendant's motion to dismiss, submitted a proposed amended complaint. (Dkt. No. 14-2.)  The proposed amended complaint was drafted without the benefit of the Court's analysis contained in this Order.  Rather than file the proposed amended complaint (Dkt. No. 14-2), Plaintiff shall be given an opportunity to draft and file an amended complaint that specifically addresses the deficiencies identified in this Order.   The Court advises Plaintiff that any amended complaint that fails to address the deficiencies identified in this order will be subject to dismissal.  Plaintiff should specifically identify and individually link the alleged conduct Plaintiff uses to support each claim asserted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### IV.    ORDER

Defendant's motion to dismiss (Dkt. No. 10) is GRANTED.  Plaintiff shall have until **June 7, 2024** to prepare and file an amended complaint that addresses the deficiencies identified herein.  If an amended complaint is not filed by this deadline, the Court will enter an order dismissing the complaint with prejudice.

Dated this 23rd day of May, 2024.

David G. Estudillo
United States District Judge